<u>NOT FOR PUBLICATION</u>

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

CHRISTIAN DIEZ,

                    Plaintiff,

v.

THOMAS J. ERVELLI, et al.,

                  Defendants.

Civil Action No: 16-8703-SDW-SCM

**OPINION [SEALED]**

April 22, 2019

**WIGENTON**, District Judge.

Before this Court are Plaintiff Christian Diez's ("Plaintiff" or "Diez") and Defendants State of New Jersey, Division of State Police ("Division"), Thomas J. Ervelli, Richard Alam, M.J. Butler, M.J. Krauchuk, and M.W. Herrick's (collectively, "Defendants")[1] Cross-Motions for

---

[1] Defendants William Legg, Victor Tabaranza, William Mullins, and Matthew DiVittorio were previously dismissed from this action.  (D.E. 25, 43.)

Plaintiff also names "John Does 1-10" as defendants.  Although courts may "allow claims based upon 'fictitious' defendants because they may be found and named later through the discovery process," *K.J. ex rel. Lowry v. Div. of Youth & Family Servs.*, 363 F. Supp. 2d 728, 740 (D.N.J. 2005) (citing *Alston v. Parker*, 363 F. 3d 229, 233 n.6 (3d Cir. 2004)), where discovery has been taken and those individuals remain unnamed, dismissal of those claims without prejudice is permitted.  *See, e.g.*, Fed. R. Civ. P. 4(m) (permitting dismissal without prejudice for failure to serve a defendant in a timely fashion); *Smith v. City of Euclid*, Civ. No. 11-1208, 2012 WL 2505851, at *3-4 (N.D. Ohio June 28, 2012) (dismissing claims against unnamed defendants on summary judgment where plaintiff "never identified or specifically named the 'unnamed officers'"); *Gose v. Bd. of Cty. Comm'rs of McKinley*, 778 F. Supp. 2d 1191, 1204-1205 (D.N.M. 2011) (dismissing unnamed defendants on summary judgment noting that discovery was completed and plaintiff had "not identified the unnamed [d]efendants or provided additional details through which the unnamed [d]efendants might be identified and served").  Here, Plaintiff named "Defendants John Does 1-10" in the Complaint as "individuals whose identities are presently unknown to [P]laintiff" but who allegedly "authorized, participated in, abetted and/or condoned unlawful and/or tortious conduct described herein."  (D.E. 1-1 ¶ 13.)  Count Twenty-Two of the Complaint is a placeholder, raising claims against these unnamed individuals.  (*Id.* ¶¶ 251-58 (stating that Plaintiff

Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, the cross motions are **GRANTED** in part and **DENIED** in part.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On December 12, 2014, at approximately 8:17 p.m., Plaintiff was driving on Route 80 East in New Jersey when he was stopped by New Jersey State Trooper Thomas J. Ervelli ("Ervelli") for failure to maintain a lane. (D.E. 47-1[2] ¶¶ 3, 11-18, 27; D.E. 45-1 ¶¶ 1-4; D.E. 51-1 ¶¶ 3, 11-18.) The events surrounding the stop were recorded by dash cameras mounted in the police cars driven by Ervelli and other officers who later arrived on the scene. (D.E. 47-1 ¶¶ 16-17; D.E. 51-1 ¶¶ 16-17; Harris Decl. Ex. A.) As Ervelli was pulling Plaintiff over, he radioed that he had seen Plaintiff throw something out the car window. (D.E. 47-1 ¶¶ 19-20; D.E. 51-1 ¶¶ 19-20.) After stopping Plaintiff, Ervelli asked him what he had thrown, and Plaintiff replied that it was a gum wrapper. (D.E. 47-1 ¶¶ 24, 28-29, 35; D.E. 51-1 ¶¶ 24, 28-29.) Ervelli's reports of the incident do not reflect that Plaintiff made any sudden or furtive moves or attempted to conceal anything while he was in the car. (D.E. 47-1 ¶¶ 22-23; D.E. 51-1 ¶¶ 22-23.) Ervelli confiscated Plaintiff's keys, walked back to his patrol car, and again radioed that Plaintiff had thrown something out the window. (D.E. 47-1 ¶¶ 25-26, 32, 71.) Ervelli then returned to Plaintiff's car and ordered Plaintiff

---

would "seek leave to amend this complaint" when "the true names of these fictitiously named defendants are ascertained").) Discovery is now complete and Plaintiff has not moved to amend the Complaint to identify these parties, nor have they been served. As such, Count Twenty-Two will be dismissed without prejudice.

[2] Citations to "D.E. 47-1" refer to Plaintiff's Statement of Material Facts Not in Dispute and the citations contained therein. Citations to "D.E. 51-1" refer to Defendants' Response to Plaintiff's Statement of Material Facts and the citations contained therein. Citations to "D.E. 45-1" refer to Defendants' Statement of Material Facts Not in Dispute and the citations contained therein.

to exit the vehicle.  (D.E. 47-1 ¶¶ 35-37; D.E. 45-1 ¶ 9.)  Ervelli told Plaintiff to face the front of his car, put his hands behind his back, and spread his feet.  (D.E. 45-1 ¶ 9; D.E. 47-1 ¶¶ 36-39.)  Ervelli also informed Plaintiff that he smelled an "odor of marijuana coming from the car" and Plaintiff's person.  (D.E. 47-1 ¶¶ 37-39; D.E. 51-1 ¶¶ 37-39.)  Ervelli asked Plaintiff if he had any weapons, to which Plaintiff responded in the negative.  (D.E. 45-1 ¶ 11; D.E. 47-1 ¶ 43.)  Ervelli then searched Plaintiff.  (D.E. 45-1 ¶¶ 9-11; D.E. 47-1 ¶ 44.)  When the search was completed, Ervelli handcuffed Plaintiff and placed him in the back of the patrol car, but did not give him a *Miranda* warning.  (D.E. 45-1 ¶ 12; D.E. 47-1 ¶¶ 48-51.)

During this time, additional officers, including M.J. Butler ("Butler"), began arriving at the scene.  (D.E. 45-1 ¶ 13; D.E. 47-1 ¶¶ 41-42, 53.)  These officers, pursuant to authorization from Sergeant Richard Alam ("Alam") who was not on-site, shut down the roadway in order to conduct a field search for the object Plaintiff had thrown from his car.  (D.E. 45-1 ¶ 13; D.E. 47-1 ¶¶ 53-66.)  The search yielded no results and the road was re-opened after approximately ten minutes.  (D.E. 45-1 ¶ 13; D.E. 47-1 ¶¶ 55, 66-68.)  After traffic resumed, Ervelli read Plaintiff his *Miranda* rights and told him that even though the officers could not find what he threw out the window, "considering that you have marijuana all over your pants . . . you're being charged."  (D.E. 47-1 ¶¶ 72, 76.)  Ervelli took Plaintiff out of the car so that he could retrieve plant material from Plaintiff's clothing.  (D.E. 45-1 ¶¶ 9-10; D.E. 47-1 ¶ 75.)  Ervelli then told Plaintiff he was under arrest, and Plaintiff was placed back inside the car.  (D.E. 47-1 ¶ 76.)  Plaintiff complained that his handcuffs were too tight, but Ervelli, after checking them, did not loosen them.  (D.E. 47-1 ¶¶ 79-80.)

Plaintiff refused to consent to a search of his car, and the car was impounded and towed to the Netcong station.  (D.E. 45-1 ¶ 14; D.E. 47-1 ¶¶ 78, 81.)  Plaintiff was also transported to the

station, where he was searched and then handcuffed to a bench in a holding cell. (D.E. 45-1 ¶¶ 14-15; D.E. 47-1 ¶¶ 84-88, 91-94, 100.) Plaintiff subsequently requested to use the bathroom, and Butler escorted him to the restroom and remained nearby while Plaintiff urinated. (D.E. 45-1 ¶ 16; D.E. 47-1 ¶¶ 106-110.) Butler escorted Plaintiff back to the holding cell and re-handcuffed him. (D.E. 45-1 ¶ 16; D.E. 47-1 ¶ 111.) Plaintiff was again asked to consent to the search of the car, and again refused his consent. (D.E. 45-1 ¶ 18; D.E. 47-1 ¶ 113.)

Ervelli then sought, and was granted, approval from Alam, that night's shift supervisor, to strip search Plaintiff. (D.E. 45-1 ¶ 17; D.E. 47-1 ¶¶ 119-25.) Ervelli did not obtain a warrant for the search and Plaintiff did not consent. (D.E. 47-1 ¶ 125.) Ervelli and Butler conducted the search at approximately 10:13 p.m. (D.E. 45-1 ¶ 17; D.E. 47-1 ¶¶ 119-25, 146, 149-152.) The search did not uncover any controlled dangerous substance ("CDS") or marijuana. (D.E. 45-1 ¶ 17; D.E. 47-1 ¶¶ 152-53.) Plaintiff claims that he was also subject to a cavity search, which Defendants deny. (D.E. 47-1 ¶¶ 154-56.) Not long after the strip search, Plaintiff gave his verbal consent to search his car, but did not sign a consent-to-search form. (D.E. 47-1 ¶ 157; D.E. 51-1 ¶ 157.)

The subsequent search of the car in the Netcong station parking lot revealed drug paraphernalia in the form of "two (2) packets of rolling papers, two (2) individual rolling papers and additional flakes of suspected marijuana." (D.E. 45-1 ¶ 19; D.E. 47-1 ¶¶ 159-60.) Plaintiff was charged with two disorderly persons offenses: possession of marijuana under 50 grams (N.J.S.A. 2C:35-10A(4)); and possession of narcotic paraphernalia (N.J.S.A. 2C:36-2). (D.E. 45-2 Ex. B.) Plaintiff was also given motor vehicle summonses alleging violations of N.J.S.A. 39:4-64 (throwing or dropping debris from a motor vehicle), N.J.S.A. 39:4-49.1 (operation of a motor vehicle while in possession of a narcotic) and N.J.S.A. 39:4-88.B (failure to maintain a lane/traffic

on marked lanes).  (D.E. 45-1 ¶ 20; D.E. 45-2 Ex. B; D.E. 47-1 ¶¶ 162-67.)  Plaintiff was released from custody at approximately 2 a.m. on December 13, 2014.  (D.E. 47-1 ¶ 161.)

On February 11, 2016, Plaintiff entered into a plea agreement "whereby: (a) the State authorized an application for a conditional discharge on the charges of possession of narcotics in a motor vehicle, possession of narcotics under 50 grams and possession of drug paraphernalia; (b) the State dismissed the charge of unsafe lane change; and (c) Plaintiff pled guilty to littering." (D.E. 45-1 ¶ 20; D.E. 47-1 ¶¶ 169-71.)  Plaintiff was sentenced to one year probation, and the court imposed a fine for the littering charge.  (*Id.*)[3]

On July 29, 2016, Plaintiff filed a twenty-two count Complaint in the Superior Court of New Jersey, Law Division, Morris County against Defendants claiming that they had violated his federal and state constitutional, statutory, and common law rights.  (D.E. 1-1.)  Defendants removed the suit to this Court on November 22, 2016.  (D.E. 1.)  The parties filed cross-motions for summary judgment on November 19, 2018, and all opposition and reply briefs were timely filed.  (D.E. 44, 46, 50, 51, 54, 55.)

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact

---

[3] After Plaintiff successfully completed probation, the drug charges against him were dismissed on February 3, 2017. (D.E. 45-1 ¶ 20; D.E. 47-1 ¶ 171.)

"might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. Furthermore, in

deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. Appx. 548, 554 (3d Cir. 2002).

## III. DISCUSSION

### A. Roadside Search (Counts One, Ten, Thirteen, & Sixteen)

Plaintiff first alleges that Ervelli's warrantless roadside search of his person violated his rights under 42 U.S.C. § 1983 (Count One), the New Jersey Civil Rights Act ("NJCRA") (Count Ten), the New Jersey Constitution (Count Thirteen), and New Jersey common law (Count Sixteen). Specifically, Plaintiff claims that the search was not conducted pursuant to an exception to the warrant requirement and Ervelli improperly sexually touched him during the search. (D.E. 1-1 ¶¶ 86-98, 182-87, 197-201, 212-18; D.E. 47 ¶¶ 17-18; D.E. 50 at 11-15.)

1. *Constitutional Claims (Counts One, Ten, Thirteen)*

42 U.S.C. § 1983 provides in relevant part:

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Section 1983 does not itself, create any rights, it merely provides "private citizens with a means to redress violations of federal law committed by state [actors]." *Woodyard v. Cty. of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013); *see also Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906-07 (3d Cir. 1997); *O'Toole v. Klingen*, Civ. No.

14-6333, 2017 WL 132840, at *5 (D.N.J. Jan. 13, 2017); *Thomas v. E. Orange Bd. of Educ.*, 998 F. Supp. 2d 338, 350 (D.N.J. 2014).[4]

To bring a § 1983 claim, "a [] plaintiff [must] prove two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law;[5] and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011); *Hilton v. Whitman*, Civ. No. 04-6420, 2008 WL 5272190, at *4 (D.N.J. Dec. 16, 2008) (noting that the plaintiff must "identify the exact contours of the underlying right said to have been violated"). For a municipality to be held liable under the theory of respondeat superior, the constitutional harm alleged must be caused by a municipal policy or custom. *Monell v. Dep't of Soc. Serv. of N.Y.*, 436 U.S. 658, 694 (1978); *see also Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 223 (3d Cir. 2015); *Mattern v. City of Sea Isle*, 131 F. Supp. 3d 305, 318 (D.N.J. 2015).

Plaintiff's § 1983 claim is based on alleged deprivation of his rights under the Fourth Amendment of the United States Constitution which is intended to "protect personal privacy and

---

[4] Similarly, "civil claims for violations of the New Jersey Constitution can only be asserted by way of the New Jersey Civil Rights Act." *Martin v. Unknown U.S. Marshals*, 965 F. Supp. 2d 502, 548 (D.N.J. 2013). Because the NJCRA is "interpreted analogously to Section 1983," this Court's § 1983 analysis controls Plaintiff's NJCRA and New Jersey constitutional claim as well. *O'Toole*, 2017 WL 132840 at *5; *see also Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011) (noting that the NJCRA "was modeled after [] § 1983"). This joint federal and state constitutional analysis applies to Counts One through Ten and Thirteen of Plaintiff's Complaint. Counts One through Nine raise § 1983 claims for violations of Plaintiff's Fourth Amendment rights, and Counts Ten and Thirteen raise claims pursuant to the NJCRA and New Jersey Constitution.

Although Plaintiff asserts a claim for violation of the New Jersey Constitution against the Division (Count Thirteen), he does not assert that the Division violated the NJCRA (*see* Count Ten). Because civil claims for violations of the New Jersey Constitution may only be brought by way of the NJCRA, Count Thirteen will be dismissed as to the Division.

[5] There is no dispute that Defendants acted at all times under color of state law.

dignity against unwarranted intrusion by the State," *Schmerber v. California*, 384 U.S. 757, 767 (1966), and provides that,

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

"The fundamental task of any Fourth Amendment analysis is assessing the reasonableness of the government search." *United States v. Sczubelek*, 402 F.3d 175, 182 (3d Cir. 2005). To that end, all Fourth Amendment searches are subject to a reasonableness test, which is measured objectively by evaluating the totality of the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). Reasonableness of a search under this approach "is determined by assessing on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Samson v. California*, 547 U.S. 843, 848 (2006); *United States v. Williams*, 417 F.3d 373, 378 (3d Cir. 2005); *Hagan v. N.J. State Parole Bd.*, Civ. No. 18-14063, 2019 WL 157298, at *3 (D.N.J. Jan. 10, 2019). As such, every search must be examined in light of its unique circumstances. *Robinette*, 519 U.S. at 39. Searches conducted without a warrant issued upon probable cause are "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 359 (1967). Here, the issue is whether the exception for searches for weapons pursuant to a *Terry* stop, as laid out in *Terry v. United States*, 392 U.S. 1 (1968) applies.

a.  Warrant Exception

Under *Terry*, "'when an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to

others,' the officer may conduct a patdown search to 'determine whether the person is in fact carrying a weapon.'" *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) (quoting *Terry*, 392 U.S. at 24.)  During the roadside stop, Ervelli repeatedly asked Plaintiff if he had any weapons on him, or anything that could "stick" Ervelli, suggesting that Ervelli was concerned for his safety.  (Harris Decl. Ex. A, File 639, Video 1.)  In addition, Ervelli reported seeing Plaintiff discard something from his car, and smelling marijuana on him, suggesting that Plaintiff might have destroyed evidence and might destroy more if given the opportunity. However, Plaintiff argues that he was pulled over for a traffic violation, that he made no furtive movements and complied with all of Ervelli's instructions, such that he was never a threat to anyone's safety.  In addition, Plaintiff claims that the item discarded from the car was a gum wrapper, not drugs.[6]  The material facts here are in conflict and any determination as to whether Ervelli's search was properly conducted pursuant to an exception to the warrant requirement should be reserved for a jury.

      b.  Scope of Search

Even if the search is found to be proper under an exception to the warrant requirement, there is a material dispute as to what took place during the search.  Plaintiff contends that Ervelli improperly touched him – fondling his genitals and putting his thumb in his anus.  (Harris Decl. Ex. C 71:3-79:3.)  Ervelli denies any such conduct.  (Harris Decl. Ex. G 69:21-72:5.)  The dash

---

[6] To the extent there is a question as to whether the search was permissible as a search incident to a lawful arrest, summary judgment would also be improper.  Under *United States v. Robinson*, 414 U.S. 218 (1973), a search of an arrestee's person and the area within the arrestee's immediate control is permissible without a warrant in order to protect officer safety, prevent escape, and preserve evidence. 414 U.S. at 235 (holding that "in the case of a lawful custodial arrest a full search of a person is not only an exception to the warrant requirement of the Fourth Amendment, but it is also a 'reasonable' search under that Amendment").  Here, the record is not clear as to precisely when Plaintiff was arrested.  Defendants contend that Plaintiff was under arrest before the search, when Ervelli took him to the front of his car, had him put his hands behind his back, and handcuffed him.  (D.E. 47-1 ¶ 45; DiFrancesco Cert. Ex. B, Ex. D 75:10-18; Harris Decl. Ex. G 69:2-9.)  Plaintiff, however, was not given a *Miranda* warning or told he was being charged until after the search was completed and he was handcuffed in the back of Ervelli's patrol car.  (Harris Decl. Ex. C 86:6-87:4.) As such, the record would not support summary judgment.

cam recording does not clearly show what occurred, as both Ervelli and Plaintiff's bodies are largely shielded by Ervelli's car, and there were no other witnesses to the search itself.  (Harris Decl. Ex. A, File 639 Video 1 at 7:20-7:40.)  As a result, this Court is faced with a credibility question that renders summary judgment improper.  *See Goldenstein v. Repossessors, Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (stating that at summary judgment, "the court may not weigh the evidence or assess credibility") (citing *MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204, 209 (3d Cir. 2005)).  Therefore, the parties' cross-motions for summary judgment as to Plaintiff's federal and state constitutional claims regarding the roadside search will be denied.[7]

       2.  *Common Law Claim (Count Sixteen)*

Defendants also move for summary judgment as to Plaintiff's claim of assault and battery under New Jersey common law (Count Sixteen).  Under New Jersey law, "[a] person is subject to liability for the common law tort of assault if: (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and (b) the other is thereby put in such immediate apprehension."  *Panarello v. City of Vineland*, 160 F. Supp. 3d 734, 767 (D.N.J. 2016) (citing *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1117 (N.J. 2009)).  "The tort of battery rests upon a nonconsensual touching."  *Leang*, 969 A.2d at 1117 (citing *Perna v. Pirozzi*, 457 A.2d 431, 439 (N.J. 1983)).  For the reasons discussed above, there is a genuine issue of material fact as to whether Ervelli improperly touched Plaintiff during the roadside search, and therefore, Defendants' motion for summary judgment as to Count Sixteen will be denied.

      B.  <u>Roadside Stop (Counts Two, Three, & Thirteen)</u>

---

[7] Plaintiff moved for summary judgment only as to Counts One and Thirteen, and Defendants moved for summary judgment as to Counts One, Ten, and Thirteen.

As to the traffic stop, Plaintiff does not challenge the constitutionality of the stop itself, but rather argues that Defendants Ervelli, Alam, and Butler impermissibly prolonged the stop in violation of his federal and state constitutional rights pursuant to § 1983, the Fourth Amendment and the New Jersey Constitution.  (D.E. 1-1 ¶¶ 99-117, 197-201; D.E. 47 at 20-24.)

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of [the Fourth Amendment]."  *Whren v. U.S.*, 517 U.S. 806, 809-10 (1996); *see also United States v. Clark*, 902 F.3d 404, 408 (3d Cir. 2018).  "Though a stop may be lawful at its inception (as the parties agree is the case here), it could become 'unreasonable,' and thus violate the Constitution's proscription, at some later time."  *Clark*, 902 F.3d at 409 (citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)).  "A stop becomes unlawful when it 'last[s] . . . longer than is necessary' to complete its mission, the rationale being that the '[a]uthority for the seizure . . . ends when tasks tied to the [mission] are[,] or reasonably should have been[,] completed.'"  *Id.* at 410 (citing *Rodriguez v. United States*, – U.S. –, 135 S. Ct. 1609, 1614 (2015)).  A traffic stop's "mission" is "to address the traffic violation that warranted the stop and attend to related safety concerns."  *Id.*  "To prolong a stop beyond that point, the officer must have acquired reasonable suspicion during the mission to justify further investigation."  *Id.*

Here, the initial traffic stop was made for a moving violation – namely failure to maintain a lane or improper lane change, which permitted Defendants to stop Plaintiff for as long as was necessary to "complete the mission of issuing a ticket for the violation."  *Rodriguez*, 135 S. Ct. at 1612 (citing *Caballes*, 543 U.S. at 407).  Here, there is a genuine issue of material fact as to whether Defendants acquired a reasonable suspicion of additional wrongdoing that justified prolonging the stop for further investigation.  Plaintiff argues that there was no reasonable suspicion of additional

wrongdoing because Plaintiff "had no criminal record," "complied with all of Ervelli's requests," had authority to drive the car, and made no furtive movements. (D.E. 47 at 22.) Defendants, however, argue that not only did Ervelli see Plaintiff toss something out of the window of the car as he was being pulled over, but he also detected an odor of marijuana on Plaintiff's person and inside the car, and observed the presence of plant material on his clothing that Ervelli believed to be marijuana, giving rise to reasonable suspicion that Plaintiff had committed a drug offense (and had potentially tried to eliminate evidence of the drugs in question). (D.E. 45 at 9-10; Harris Decl. Ex. C 72:6-74:8, 80:1-11.) Whether this is sufficient to establish a reasonable suspicion that permitted an extension of the stop is a question of fact that turns on credibility determinations and requires a weighing of the evidence that is improper on summary judgment. Therefore, the parties' cross-motions for summary judgment as to the legality of the length of the traffic stop (Counts Two, Three, and Thirteen) will be denied.

C. Excessive Force (Counts Four, Ten, & Thirteen)

Plaintiff next claims that Defendants violated his federal and state constitutional rights by improperly handcuffing him both at the roadside and in the holding cell. (D.E. 1-1 ¶¶ 118-33, 182-87, 197-201; D.E. 47 at 24-27.) Claims for excessive force are "analyzed under the Fourth Amendment and its reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004); *Panarello*, 160 F. Supp. 3d at 755. Whether the use of force is "reasonable" is "judged from the perspective of a reasonable officer at the scene, rather than with 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Determining whether an officer's use of force was "objectively reasonable" is reviewed "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397; *see also Kopec v. Tate*, 361 F.3d 772, 776-77 (3d Cir. 2004) (discussing factors to be

considered including duration of the officer's action and whether it takes place in the context of an arrest). The presence of an injury may be considered in the analysis, but is not dispositive. *See Flood v. Schaefer*, 439 F. App'x 179, 182 (3d Cir. 2011) (noting that "the central issue is the force the officers employed (and whether it was reasonable under the circumstances), not the injury they caused").

Here, there is a genuine issue of material fact as to whether Defendants' decision to handcuff Plaintiff when he was detained by the roadside and then again in the holding cell was reasonable. Plaintiff alleges not only that the handcuffs were unnecessary as he had been stopped for a traffic violation and had not exhibited any violent or self-harming behavior, but also that they were too tight and caused bruises on his wrists. (D.E. 50 at 18-20; Harris Decl. Ex. C 92:1-94:8, Ex. J; Supp. Harris. Decl. Ex. D at 130.) Defendants, in contrast, argue that Plaintiff was handcuffed for security reasons and that they were used properly at all times, which may have made Plaintiff uncomfortable, but did not violate his rights. (D.E. 45 at 12-13.) There being an issue of genuine material fact as to the reasonableness of the use of handcuffs during Plaintiff's time in police custody, this Court will deny the parties' cross-motions for summary judgment as to Plaintiff's excessive force claims.[8]

---

[8] Plaintiff moves for summary judgment as to Counts Four and Thirteen, and Defendants move for summary judgment as to Counts Four, Ten, and Thirteen. Plaintiff also clarifies that he "has moved for summary judgment only with respect to his claim that defendants violated his Fourth Amendment right by handcuffing him to the bench." (D.E. 54 at 7.)

D.  <u>False Arrest/Imprisonment[9] (Counts Five, Six, Ten, Thirteen, Seventeen, & Eighteen)</u>

Under both federal and state law, a claim for false arrest and/or false imprisonment arises from "the constraint of [a] person without legal justification." *Ramirez*, 998 F. Supp. at 434 (citing *Fleming v. United Parcel Serv., Inc.*, 604 A.2d 657, 680 (N.J. Super. Ct. Law Div. 1992) (discussing New Jersey tort of false imprisonment)[10]; *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) (discussing § 1983 claim for false imprisonment as arising from "the Fourth Amendment's guarantee against unreasonable seizures"). A showing of probable cause provides sufficient legal justification for such claims under federal or state law.  *See, e.g.*, *Pollock v. City of Phila.*, 403 F. App'x 664, 669 (3d Cir. 2010); *Fleming*, 604 A.2d at 680 (noting that "the existence of probable cause is a defense" to a claim for false arrest or false imprisonment).  "[P]robable cause exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been . . . committed by the person to be arrested."  *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995); *see also Gerstein v. Pugh*, 420 U.S. 103, 111-12 (1975) (defining probable cause "in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense'") (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

Defendants argue that summary judgment is proper because Ervelli had probable cause to arrest Plaintiff "for drug-related crimes."  (D.E. 45 at 13.)  Specifically, Ervelli smelled the odor of marijuana on Plaintiff's person and in his car and observed traces of marijuana on his clothing.

---

[9] Although Plaintiff brings separate claims for false arrest and false imprisonment (Counts Seventeen and Eighteen), "New Jersey courts treat false arrest and false imprisonment as the same tort."  *Ramirez v. United States*, 998 F. Supp. 425, 434 (D.N.J. 1998).

[10] The elements of the tort pursuant to New Jersey common law are: "(1) an arrest or detention of the person against his will; (2) done without proper legal authority or 'legal justification.'"  *Fleming*, 604 A.2d at 680.

(*Id.* at 13-15; D.E. 45-1 ¶¶ 8, 10, 19.)  Plaintiff disputes that such evidence existed when he was arrested and detained.  (D.E. 50 at 18; D.E. 47-1 ¶ 50.)  Where, as here, "the probable cause determination rests on credibility conflicts," the question of probable cause in § 1983 suits is generally "one for the jury."  *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000).  Therefore, Defendants' motion for summary judgment as to Plaintiff's false arrest and false imprisonment claims will be denied.[11]

    E.  <u>Strip Search (Counts Seven, Ten, Eleven, Twelve, & Thirteen)</u>

Plaintiff contends that the strip search conducted at the Netcong police station violated his federal and state constitutional rights as well as New Jersey statutory law.  (D.E. 1-1 ¶¶ 150-68, 182-201; D.E. 47 at 28-32, 33-37.)

    1.  *Constitutional Claims*

"[F]or a strip search to be constitutional there must be reasonable suspicion that the arrestee is concealing weapons or contraband; such suspicion could arise either from the specific circumstances of the arrestee or the arrest, or from the nature of the offense charged."  *DiLoreto v. Borough of Oaklyn*, 744 F. Supp. 610, 620 (D.N.J. 1990) (citing *Davis v. Camden*, 657 F. Supp. 396, 400-01 (D.N.J. 1987)); *see also Roberts v. Gillikin*, Civ. No. 6-88, 2007 WL 2066382, at *3 (D.N.J. July 13, 2007) (noting that courts use a "reasonable suspicion standard" to determine if a strip search is constitutional).  Defendants argue that a strip search of Plaintiff was permissible because, despite "the powerful smell of marijuana and the flakes on Plaintiff's clothes indicating he had recently been handling the drug, [Plaintiff's] stash could not be found . . . After exhausting

---

[11] This Court is unpersuaded by Defendants' argument that Plaintiff is "barred from arguing that the arrest/imprisonment was without legal justification" because he "pled guilty to the very charges to which the arrest pertains."  (D.E. 45 at 15 (citing *Heck v. Humphrey*, 512 U.S. 477 (1994).)  Plaintiff did not plead guilty to any drug offenses, rather, he pled guilty to littering.  The drug charges against Plaintiff were conditionally discharged pursuant to that plea, and then later dismissed.

other options, . . . [Defendants] had ample probable cause to conduct a strip search to attempt to locate the drugs before [Plaintiff] could destroy or consume them."  (D.E. 45 at 16-17; *see also* D.E. 51 at 4 (arguing that because "troopers had been fruitless in their efforts to locate the drugs the evidence of which was on Plaintiff's very body, is precisely the reason they needed to be so careful in ensuring that he could not be given an opportunity to destroy or consume contraband in the restroom and why they needed to make an attempt to find the suspected contraband on his person").)  This argument presumes, however, that Ervelli's testimony regarding the smell of marijuana on Plaintiff and his observation of flakes on Plaintiff's clothes is credible.  Plaintiff argues that it is not, and that even if it were, "an odor coming from a person's <u>outer</u> clothing does not reasonably suggest that contraband is hidden <u>under</u> that person's clothing."  (D.E. 47 at 31.).  This creates a genuine issue of material fact as to whether Defendants had a reasonable suspicion that Plaintiff was concealing contraband, and therefore, summary judgment is inappropriate.[12]

    2.  *State Law Claims*[13]

Plaintiff also alleges that the search of his person conducted at the Netcong station violated his rights under New Jersey statutes regarding strip and body cavity searches, which "provide[] greater protection than [that] afforded by the Fourth Amendment."  *New Jersey v. Harris*, 894 A.2d 8, 20 (N.J. Super. Ct. App. Div. 2006).  The New Jersey strip search statute provides, in

---

[12] This Court applies the same standard to, and reaches the same conclusion regarding, Plaintiff's claim that he was unlawfully subjected to a body cavity search.  *See Roberts*, 2007 WL 2066382, at *3 (noting that "courts in this district use the same standard of 'reasonable suspicion' to evaluate both strip and body cavity searches for arrestees"); *O'Brien v. Borough of Woodbury Heights*, 679 F. Supp. 429, 433-34 (D.N.J. 1998).  This Court notes also that Defendants deny that any such search occurred, creating a credibility question for the jury.

[13] This Court finds no support for Defendants' argument that New Jersey law does not provide for an independent civil cause of action for violation of the two statutes at issue.  (*See* D.E. 45 at 18-19.)  Indeed, courts in this district have permitted claims under these statutes to proceed even in cases where federal and state constitutional law claims alleging wrongful searches have also been raised.  *See, e.g.*, *Crump v. Passaic Cty.*, 147 F. Supp. 3d 249 (D.N.J. 2015); *Roberts*, 2007 WL 2066382 at *2-5.

relevant part, that persons who have "been detained or arrested for commission of an offense other than a crime shall not be subjected to a strip search unless: a. [t]he search is authorized by a warrant or consent; b. [t]he search is based on probable cause that a weapon, controlled dangerous substance, . . . or evidence of a crime will be found and a recognized exception to the warrant requirement exists . . .." N.J. Stat. Ann. 2A:161-A-1 (West 2019).  Similarly, the New Jersey body cavity search statute, provides, in relevant part, that persons who have "been detained or arrested for commission of an offense other than a crime shall not be subjected to a body cavity search unless . . . [t]he search is authorized by a warrant or consent . . . ."  N.J. Stat. Ann. 2A:161A-1 (West 2019).  A "strip search" is defined as "the removal or rearrangement of clothing for the purposes of visual inspection of the person's undergarments, buttocks, anus, genitals or breasts," and a "body cavity search" is defined as "the visual inspection or manual search of a person's anal or vaginal cavity."  N.J. Stat. Ann. § 2A:161A-3.

Ervelli testified that he had probable cause for the strip search "based off odor of marijuana still emanating from" Plaintiff's clothing, and Butler testified that exigent circumstances necessitated the search to prevent Plaintiff from destroying additional drug evidence.  (D.E. 47-1 at 122; Harris Decl. Ex. G. 102:17 to 103:4, 117:6-12, Ex. I 89:5-90:23.)  Plaintiff, however, argues that Ervelli's testimony is not credible because he had already been searched twice, he was handcuffed in a holding cell, was being constantly monitored, and "an odor coming from a person's <u>outer</u> clothing does not reasonably suggest that contraband is hidden <u>under</u> that person's clothing." (D.E. 46 at 31 (emphasis in original); *see also* Harris Decl. Ex. C 101:10-103:15.) Whether probable cause and exigent circumstances existed for the strip search is a factual question for the jury, therefore, summary judgment will be denied as to Count Eleven.

There is also a genuine issue of material fact as to whether a body cavity search ever occurred. Ervelli and Butler both testified that it did not. (Harris Decl. Ex. G 30:5-32:23, Ex. I 105:12-22.) Plaintiff testified that it did. (Harris Decl. Ex. C 112:15-113:16.) Because there are no recordings of the search nor additional witnesses, any resolution of this question requires the fact finder to make a credibility determination; thus, summary judgment is inappropriate and will be denied as to Count Twelve.

### F. Invasion of Privacy (Counts Eight, Thirteen, & Nineteen)

Plaintiff also asserts that Butler observed him using the bathroom while in police custody in violation of his rights under § 1983 and the Fourth Amendment, as well as New Jersey common law. It is well-settled in this District that, pursuant to § 1983 and the Fourth Amendment, "arrestees may reasonably expect to defecate, urinate and change sanitary napkins or tampons without direct visual observation by law enforcement officers, unless some justification for the intrusion is demonstrated." *Wilkes v. Borough of Clayton*, 696 F. Supp. 144, 147-48 (D.N.J. 1988); *see also DiLoreto v. Borough of Oaklyn*, 744 F. Supp. 610, 619 (D.N.J. 1990). Here, Plaintiff argues that Butler had no justification for observing him as he had already been searched twice. (D.E. 1-1 ¶¶ 231-39; D.E. 46 at 32-33.) Butler testified that it was his usual practice to escort detainees to a single stall bathroom and either leave the "door cracked open just so we can keep an eye that the person is not injuring themselves or, again, attempting to hide something in there or flush something or whatever," or if using a bathroom with multiple stalls, to "walk into the bathroom with them and they do what they need to do [before] . . . escorting them back." (Harris Decl. Ex. I at 76:2-78:12.) It is not clear from the record that Butler directly observed Plaintiff urinate. Further, even if Butler did monitor Plaintiff, there is a genuine issue of material fact as to whether Defendants' interest in ensuring that Plaintiff did not destroy drug evidence justified the

observation. (*See id.* 77:25-78:4 (noting that detainees are escorted in order to ensure they are not harming themselves or destroying evidence).)  This is a question of fact for the jury, and thus, this Court will deny the parties' cross-motions for summary judgment as to Counts Eight and Thirteen.

As to Plaintiff's state law claim for invasion of privacy[14] (Count Nineteen), summary judgment is also inappropriate.  The tort requires a plaintiff to show "(1) [their] solitude, seclusion, or private affairs were intentionally infringed upon, and that (2) this infringement would highly offend a reasonable person." *Ehling v. Monmouth-Ocean Hosp. Serv. Corp.*, 872 F. Supp. 2d 369, 373 (D.N.J. 2012).  "'[E]xpectations of privacy are established by general social norms' and must be objectively reasonable – a plaintiff's subjective belief that something is private is irrelevant." *Id.* (citing *White v. White*, 781 A.2d 85, 92 (N.J. Super. Ct. Ch. Div. 2001)).  "[T]he right of privacy encompasses the right to be protected from a wrongful intrusion which would outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *N.O.C., Inc. v. Schaefer*, 484 A.2d 729, 710 (N.J. Super. Ct. Law Div. 1984) (citing *McGovern. v. Van Riper*, 43 A.2d 514, 518 (N.J. Super. Ct. Ch. Div. 1945)).  As discussed above, it is not clear how or if Butler observed Plaintiff while he was using the restroom. In addition, whether that alleged intrusion would "highly offend a reasonable person" is a question of fact best answered by a jury.[15]

---

[14] New Jersey law "recognize[s] that the right to privacy is not one tort, but rather, a complex of four, namely, (1) intrusion upon solitude or seclusion[;] (2) public disclosure of private facts, *e.g.*, unreasonable publicity given to one's private life[;] (3) false light privacy, *e.g.*, publicity that normally places the other in a false light before the public; (4) appropriation of name or likeness." *N.O.C., Inc*, 484 A.2d 729 at 731.  Plaintiff has failed to identify which of the four torts his invasion of privacy claim is asserting, therefore, this Court treats it as a claim for intrusion upon solitude or seclusion.

[15] Defendants' argument that they are entitled to qualified immunity as to Plaintiff's constitutional claims is unavailing. "The doctrine of qualified immunity provides that 'government officials performing discretionary functions ... are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Bridges v. Torres*, Civ. No. 17-7107, 2019 WL 1238826, at *2 (D.N.J. Mar. 18, 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  However, "a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis," including to the "objective reasonableness of an officer's conduct. *Ianuale v. Borough of*

G.  Negligence (Counts Fourteen & Fifteen)

Plaintiff asserts negligence claims against only the Division (Count Fourteen)[16] and Alam, M.J. Krauchuk ("Krauchuk"), and M.W. Herrick ("Herrick") (Count Fifteen).  In New Jersey, a plaintiff asserting a negligence claim must establish four elements: "(1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages."  *Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 59 A.3d 561, 571 (N.J. 2013); *see also Fernandes v. DAR Dev. Corp.*, 119 A.3d 878, 885-86 (N.J. 2015).  To assert a claim for negligent hiring or supervision, a plaintiff must show "(1) the employer 'knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons' and (2) the employer's negligence in hiring and supervising the employee permitted the employee's 'incompetence, unfitness or dangerous characteristics' to proximately cause injury to a third party."  *Hayward v. Salem City Bd. of Educ.*, Civ. No. 14-5200, 2016 WL 4744132, at *11 (D.N.J. Sept. 12, 2016) (quoting *DiCosala v. Kay*, 450 A.2d 508, 516 (N.J. 1982)).

There is nothing in the record to support Plaintiff's claims against the Division for negligent hiring and/or supervision.  There is no indication that the Division had any knowledge, or a reason to know, that any of its officers were incompetent or dangerous, or had any attributes that would render them unfit for their duties or likely to cause injury to others. Therefore, this Court will grant Defendants' motion for summary judgment as to Count Fourteen.

---

*Keyport*, Civ. No. 16-9147, 2018 WL 5005005, at *4 (D.N.J. Oct. 16, 2018) (citing *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) (internal citations omitted)).  Given the numerous factual disputes regarding the reasonableness of Defendants' conduct in this matter, Defendants are not entitled to qualified immunity.

[16] This Court treats Count Fourteen as a claim for negligent hiring and/or supervision.  (*See* D.E. 1-1 ¶¶ 202-206 (alleging the Division was negligent in hiring Ervelli and failed to properly train and supervise Ervelli, Alam, Krauchuk and Herrick to ensure that detainees were properly treated while detained).)

As to negligence on the part of the supervisory officers, the record does not support any showing of negligence on the part of Krauchuk or Herrick.  Indeed, the two are only mentioned five times in Plaintiff's lengthy Statement of Material Facts Not In Dispute, (D.E. 47-1), and then only to note that: Krauchuk and Herrick were both sergeants in the New Jersey State Police during the time in question; Krauchuk, one of Alam's superiors, was present at the station the night Plaintiff was searched; both men approved the New Jersey State Police Investigation Report and the Motor Vehicle Stop Report Ervelli prepared with regard to Plaintiff; and Herrick signed Plaintiff's arrest report.  (D.E. 47-1 ¶¶ 8-9, 121, 176, 180, 184.)  There is simply no evidence to support a finding that Krauchuk or Herrick violated any duty owed to Plaintiff by virtue of their mere presence at the station or signing paperwork regarding Plaintiff's arrest or detention.

As to Alam, however, the record before this Court is more extensive.  Alam authorized the road closure and the strip search, was present in the station as the shift supervisor on the night in question, and had "received periodic training with respect to strip searches and body cavity searches."  (D.E. 47-1 ¶¶ 114-19, 128-34.)  There are significant factual questions regarding what Alam knew or should have known regarding the events at issue and whether his actions violated a duty owed to Plaintiff.  Therefore, Defendants' motion for summary judgment as to Count Fifteen will be granted as to Krauchuk and Herrick[17] and denied as to Alam.

H.  Infliction of Emotional Distress (Counts Twenty & Twenty-One)

To establish a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must show: "(1) that the defendant intended to cause emotional distress; (2) that the conduct was

---

[17] For the same reasons, summary judgment will also be granted as to Krauchuk and Herrick on Counts Nine, Ten, and Thirteen, which allege that the two officers violated Plaintiff's federal and state constitutional rights by approving Ervelli's investigative report.  Other than signing off on the report, the record contains nothing to suggest that Krauchuk or Herrick knew or should have known about or willingly participated in any violation of Plaintiff's rights.

extreme and outrageous[18]; (3) that the actions proximately caused emotional distress; and (4) that plaintiff's emotional distress was severe." *Witherspoon v. Rent–A–Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001) (citing *Buckley*, 544 A.2d at 863). "The severity of the emotional distress [alleged] raises questions of both law and fact. Thus, the court decides whether as a matter of law such emotional distress can be found, and the jury decides whether it has in fact been proved." *Buckley*, 544 A.2d at 864. Plaintiff claims that as a result of the events that gave rise to this lawsuit, he suffers from nightmares and anxiety which affect his work and has had to seek treatment from a therapist. (Supp. Harris Decl. Ex. A at 13, Ex C, Ex D.) Whether Plaintiff has experienced emotional distress severe enough to satisfy his claim for IIED is a question of fact for the jury; therefore, summary judgment as to Count Twenty will be denied.[19]

Under New Jersey law, a claim of negligent infliction of emotional distress ("NIED") "requires a plaintiff to prove '(1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate, familial relationship between plaintiff and the injured person; (3) observation of the death or injury at the scene of the accident; and (4) resulting severe emotional distress.'" *Hayward*, 2016 WL 4744132 at *12 (quoting *Portee v. Jaffee*, 417 A.2d 521, 528 (N.J. 1980)). Here, Plaintiff does not allege that he observed the "death or serious physical injury" of another person. Rather, he complains "only of the search performed on [him] . . . and not [his] witnessing of a traumatic injury to another person." *Id*. Therefore, Defendants' motion for summary judgment will be granted as to Count Twenty-One.

---

[18] Extreme and outrageous conduct "must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988).

[19] Because this Court finds there is a genuine issue of material fact as to one element, it need not address the remaining elements.

**IV.     CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is **DENIED**.

Defendants' Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.  An

appropriate order follows.

_____/s/ Susan D. Wigenton_____
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:          Clerk
cc:            Steven C. Mannion, U.S.M.J.
               Parties

24